UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GREGORY CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16CV00094 AGF |
| | ) |
| AUSTIN CLARK, Deputy, in his | ) |
| individual capacity only, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action, brought by Plaintiff Gregory Clark under 42 U.S.C. § 1983 against Defendant Austin Clark in his individual capacity as deputy sheriff of Ste. Genevieve County, Missouri, is before the Court on Defendant's motion for summary judgment. Although this is a close case in some respects, for the reasons set forth below, the motion will be granted as to all claims.

## BACKGROUND

The record establishes the following for purposes of the motion before the Court. In the early afternoon of January 25, 2016, a 911 call was received by the Ste. Genevieve County Sheriff's Department from the Bloomsdale Elementary School about gunshots fired near the school coming from the area of a nearby highway rest stop or adjacent woods. Defendant and Detective Mathew Ballew were driving in the vicinity of the rest stop when the police dispatcher radioed them to investigate the complaint. Specifically,

they were advised, "There is a report of shots fired near the rest stop, possibly in the wooded area between the rest stop and the elementary school."

The officers drove to the rest stop, arriving there four to ten minutes after receiving the call.  They parked, and saw three vehicles and one person in the parking area.  The person was Plaintiff, who is African-American.  He was seated at a picnic table near his pick-up truck at the end of the parking area that was near the woodland.  The officers approached Plaintiff and asked him if he had heard any shots, and Plaintiff responded that he had not.  Plaintiff told the officers that he was armed, and immediately gave the officers, without being asked, his concealed carry permit, his driver's license, and his military identification card.   He told the officers that he was on his way from Memphis to Chicago.

Defendant "ran" Plaintiff's identification, that is, he called the information in to the Sheriff's Department to check for warrants or criminal history, and was told that Plaintiff was "clean."  This process took one to two minutes.  Plaintiff asked Defendant why he had "run" him and Defendant responded that his boss liked to know to whom he was talking.  Plaintiff said words to the effect of, "If I were someone else you wouldn't have run me," and testified that Defendant responded, in an angry tone, "Don't pull the race card on me."

Defendant and Ballew walked away to the building in the rest area that contained a rest room.  When the officers were walking to the building, Plaintiff went to the back of his vehicle, got out a bottle of water, got into the vehicle, took his weapon off his side and placed it in the center console.  He then drove out of the rest area onto the highway

heading north. The officers testified that they believed Plaintiff left to avoid further questioning. They returned to their car and followed Plaintiff, driving close behind him. Defendant testified by deposition that he observed Plaintiff moving about in the front seat of the pick-up, for a "long duration," moving toward the passenger seat and center console. ECF No. 42-2 at 28-29. Although Plaintiff does not deny that he was moving in his truck, he maintains that his back window was tinted, such that Defendant could not have observed this. In support, Plaintiff submits a photograph of the back window of the pick-up. The Court is unable to discern from the photograph whether someone driving behind the pick-up would have been able to observe movement in the front seat. But the Court does rely on this disputed fact in reaching its determination below.

Approximately two miles north of the rest area, Plaintiff exited and crossed over the highway, and reentered the highway travelling south. Plaintiff testified that he did so to avoid the police. Defendant called for other officers in marked patrol cars to come and pull Plaintiff over. After driving about 19 miles, with Defendant and Ballew following him, Plaintiff neared an exit where other police cars were positioned. Plaintiff testified as follows: "I decided to pull over once I seen there were several police cars all over the area, I decided to pull over on my own. No one pulled me over." ECF No. 42-1 at 22. Upon pulling over, Plaintiff parked his pick-up truck on the exit ramp and put both his hands out the window of his vehicle.

Defendant and about four other officers approached Plaintiff's truck with guns drawn, and told him to get out of the vehicle. Plaintiff did so. Defendant's body cam recording shows that as he was approaching Plaintiff's vehicle, Defendant's gun was in a

"low ready" position, but as he got closer, he raised his arm so that the gun was pointed at Plaintiff. Defendant and/or other officers searched Plaintiff and ordered him to stand away from his vehicle. Plaintiff testified that after he was patted down, Defendant "immediately grabbed the keys" from Plaintiff's vehicle, went to the back of the truck, opened the tailgate, and started searching the back of the truck. EFC No. 42-1 at 25. Defendant asked Plaintiff where his gun was located. Plaintiff stated that it was in the console, and Defendant found it there. Defendant's bodycam recording reflects that Defendant asked Plaintiff how many rounds he had in his gun and Plaintiff responded that he didn't know as he had not fired the gun in years. Defendant determined that Plaintiff's gun was missing two bullets. When asked about the two missing bullets, Plaintiff said he couldn't explain it, and repeated that he had not fired the gun in several years.

Defendant asserts that he did not search the cargo area of the pick-up, and relies on footage from his bodycam recording to support this assertion. Based on its viewing of the recording, the Court concludes that it refutes Plaintiff's rendition of the facts on this matter—the recording shows the happenings during the time frame in which Plaintiff alleges Defendant searched the cargo area, and it does not depict such a search by Defendant, or any other officer, then, or at any other time.

A deputy at the scene called the gun's serial number into dispatch and a report came back that the gun was stolen. Plaintiff explained to the officers that he had reported the gun as stolen when he had left the military and it was lost in transit, but the gun was found a few days later and he filed a follow-up report. Plaintiff was then handcuffed on

4

Defendant's orders. Defendant and Ballew left the scene, and a few minutes later, the other officers at the scene received confirmation that the gun had been reported as found, and that it did belong to Plaintiff. At some point, an officer smelled Plaintiff's gun and determined it had not been shot recently. Plaintiff was released. Approximately 20 minutes elapsed from when Plaintiff was patted down until he was released. According to Plaintiff, when he got back in his vehicle, he drove a few miles to a gas station, and there checked his gun and determined that there were two bullets less in the gun than had been there at the beginning of the incident.

In his seven-count amended complaint, Plaintiff asserts claims for unconstitutional seizure in detaining Plaintiff at the rest stop while running an identification check on him, in that Plaintiff was not free to leave because Defendant had Plaintiff's permit, license, and identification card (Count I); unconstitutional seizure at the highway exit ramp (Count II); excessive use of force in approaching Plaintiff with a drawn gun at the exit ramp (Count III)[1]; unconstitutional search of the cargo area of Plaintiff's vehicle at the exit ramp (Count IV); and theft of two bullets, in violation of Plaintiff's substantive due process rights (Count V). Plaintiff also asserts an equal protection claim, alleging that Defendant's first detention of Plaintiff at the rest area, which led to the subsequent events, was based on Plaintiff's race (Count VI); and a First Amendment free speech claim, alleging that Defendant called for additional police cars, detained Plaintiff at the exit ramp, used excessive force, conducted the cargo area search, and stole the bullets all

---

[1] Plaintiff has withdrawn his claim that having him handcuffed was also an unconstitutional use of force.

because Plaintiff suggested at the rest stop that Defendant would not have detained someone who was not African-American (Count VII). In each count, Plaintiff seeks compensatory and punitive damages.

## ARGUMENTS OF THE PARTIES

In support of his motion for summary judgment, Defendant argues that he is entitled to qualified immunity on all counts. More specifically, he argues that his conduct was objectively reasonable under the circumstances when he ran Plaintiff's identification information at the rest stop. Defendant maintains that Plaintiff was "the author of his own detention" by voluntarily giving Defendant the permit, license, and identification that rendered him unfree to leave. Defendant argues that, moreover, Defendant had objectively reasonable grounds to detain Plaintiff for the one minute it took to run the identification information because "Plaintiff's conduct created reasonable suspicion that Plaintiff could have or was about to commit a crime" in light of the "shots fired" dispatch moments earlier. ECF No. 42 at 9. Thus, according to Defendant, the encounter at the rest area was a permissible investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968).

Defendant argues that the totality of circumstances provided him not only reasonable suspicion, but also probable cause that Plaintiff was involved in the reported shots fired, thereby justifying the detainment on the exit ramp. Defendant points to the facts that Plaintiff was the only person visibly present at the rest stop when Defendant and Ballew arrived to investigate the shots fired call, Plaintiff was armed, he was defensive about his information being run, he immediately left the rest stop when the deputies walked away to continue the investigation, he appeared to be moving something

6

in the passenger seat or center console as he was driving, and he changed directions on the highway.

Defendant next argues that he is entitled to qualified immunity with respect to the excessive force claim, as approaching Plaintiff's vehicle with his gun drawn was objectively reasonable under the circumstances. With respect to Plaintiff's remaining claims, Defendant argues that his bodcam recording shows that he did not search the cargo area of Plaintiff truck, and in any event, probable cause existed for this search; the theft of two bullets, even if true, does not state a substantive due process claim, which requires conscience-shocking conduct; and Plaintiff has failed to provide any evidence showing a discriminatory purpose in Defendant's conduct, or that any of Defendant's actions were motivated by Plaintiff's suggestion at the rest area that Defendant "ran" Plaintiff's information due to Plaintiff's race.

In response to the motion for summary judgment, Plaintiff essentially reasserts the facts and claims in his amended complaint. With respect to Count I, he argues that the circumstances did not provide any articulable facts to support a reasonable suspicion that Plaintiff had fired the shots near the school that would have justified a *Terry* stop, and running Plaintiff's identification, however briefly that took. With respect to Count II, Plaintiff argues that Defendant had no reasonable grounds to stop and detain Plaintiff at the exit ramp and that Defendant, therefore, seized Plaintiff in violation of the Fourth Amendment. Plaintiff maintains that none of the facts relied on by Defendant (such as Plaintiff leaving the rest area, changing direction on the highway, and possessing a gun),

7

separately or in combination, were sufficient to give Defendant a reasonable belief that Plaintiff committed a crime or was dangerous.[2]

Plaintiff maintains that approaching him with a gun pointed at him was also unreasonable under the circumstances, and thus constituted excessive force under the Fourth Amendment. Plaintiff acknowledges that the Eighth Circuit has not ruled directly on whether pointing a gun at a person can be excessive force, but he points to other circuits that have so held, and argues that the lack of authority from the Eighth Circuit does not mean that a clearly established right is not involved, for purposes of qualified immunity. Plaintiff argues that no reasonable officer could have believed that pointing a gun at Plaintiff under the circumstances presented here, was constitutional.

Plaintiff next addresses the claim that Defendant's search of the cargo area of the pick-up truck was unconstitutional. He maintains that a fact question is presented as to whether the search occurred, and that no circumstances justified this search. With respect to the substantive due process claim involving the alleged theft of two bullets, Plaintiff argues that the theft shocks the conscience because it implied an attempt to frame Defendant for the shots fired near the school, something he did not do.

Plaintiff maintains that his equal protection claim survives summary judgement because the statement by Defendant at the rest stop, "don't play the race card with me,"

---

[2] In response to the motion for summary judgment, Plaintiff does not argue that the duration of the stop exceeded the time necessary to investigate the matter – he asserts that there was no probable cause or reasonable suspicion for the stop. With respect to the duration, the Court notes that at least half the time of the detention related to the report that the gun was stolen, and the investigation and resolution of that report. Plaintiff has abandoned his related claim that handcuffing him after receipt of the report that the gun was stoles was excessive force.

said an angry tone, shows animus over race. Lastly, Plaintiff argues that his criticism of Defendant at the rest step for "running" Plaintiff's identification ("If I were someone else you wouldn't have run me would you have was run me?") was protected speech, and the connection between that criticism and Defendant's subsequent actions challenged in this case is a question for the jury.

## DISCUSSION

### Summary Judgment Standard

Federal Rules of Civil Procedure Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences that may be reasonably drawn [therefrom] in the light most favorable to the non-moving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). "The nonmoving may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. . . . The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations omitted).

### Qualified Immunity

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonable person would have known. The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The qualified immunity analysis thus is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question. Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant.

*Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (citations omitted).

> [O]fficers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. "Clearly established" means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate.

*Dist. of Columbia, v. Wesby,* ___ S. Ct. ___, 2018 WL 491521, at * 10 (Jan. 22, 2018) (citations omitted); *see also Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. . . . The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Wesby*, 2018 WL 491521, at *11 (citations omitted). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "Once the predicate facts are

established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001) (citation omitted).

**Encounter at Rest Area**

The Court agrees with Defendant that that he is entitled to qualified immunity on Plaintiff's claim that Plaintiff was subject to an unconstitutional seizure at the rest area. The evidence, even when viewed in the light most favorable to Plaintiff, does not demonstrate the deprivation of a constitutional or statutory right that was clearly established at the time of the encounter. Plaintiff claims that he was detained because he was not free to leave while Defendant had Plaintiff's identification items that Plaintiff gave him.

> Although the Fourth Amendment prevents police officers from seizing a person without a reasonable suspicion of criminal activity, scrutiny under the amendment is not triggered by a consensual encounter between an officer and a citizen. A seizure does not occur simply because a police officer approaches an individual and asks a few questions so long as a reasonable person would feel free to disregard the police and go about his business. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and request to examine his or her identification. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred.

*United States v. Stewart*, 631 F.3d 453, 456 (8th Cir. 2011) (citations omitted). Under the undisputed facts of this case, no clearly established rights of Plaintiff were violated at the rest area. Rather it began as a consensual encounter, during which time Plaintiff volunteered his identification and concealed carry permit. Given that Plaintiff admitted he was armed, and was in the area from which there was a report of shots fired, the officers reasonably could detain Plaintiff for the minute or two it took to run an

identification check on him. Thus, Defendant did not violate Plaintiff's clearly established rights, nor would it have been clear to a reasonable officer that what he was doing was unlawful.

**Detention at Exit Ramp**

As noted above, Plaintiff testified that it was his own decision to exit the highway when he saw police cars at the location, and that no one pulled him over. Thus the Court concludes that no police stop occurred until the officers approached Plaintiff's vehicle with guns drawn and ordered him to exit the vehicle. The Court further concludes, that this detention constituted an investigatory, or *Terry* stop. An investigatory, or *Terry*, stop without a warrant is valid

> if police officers have a reasonable and articulable suspicion that criminal activity may be afoot. When justifying a particular stop, police officers must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. A *Terry* stop may turn into an arrest if the stop lasts for an unreasonably long time or if officers use unreasonable force.

*United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999) (citation omitted).

Under the circumstances of this case, the Court concludes that a reasonable officer would not have known for certain that detaining Plaintiff at this point in time was unlawful. Although each separate factor relied upon by Defendant, such as Plaintiff's presence at the rest stop, might not have provided Defendant with a reasonable, articulable suspicion, *see, e.g., Johnson v. Phillips*, 664 F.3d 232, 237 (8th Cir. 2011) (holding that it was clearly established that a person's presence in a suspicious location does not, in and of itself, provide law enforcement with a reasonable, articulable

12

suspicion to justify a *Terry* stop), taking all the factors present here together, a reasonable officer might have concluded that detaining Plaintiff at the exit ramp was not unlawful. *See United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) ("In considering the reasonableness of an officer's suspicion, [a court] must determine whether the facts collectively provide a basis for reasonable suspicion, rather than determine whether each fact separately establishes such a basis.").

Again, it is undisputed that Plaintiff was the only person the officers saw at the rest stop within minutes of when they received the dispatch of shots fired near the rest are. Plaintiff admitted he was armed. When the officers went to check the building with the restroom, Plaintiff left and got on the highway. A few miles later, Plaintiff exited and got on the highway driving the opposite direction from where he had told the officers he was headed. After seeing the officers were still following him, and increased police presence, Plaintiff exited the highway, stopped his car, and put his hands out the window. Although Plaintiff has explained that he engaged in this conduct simply to get away from the police, when assessing qualified immunity, the Court must examine the facts from the perspective of those knowable to the officer at the time. Although a contrary conclusion might also be reasonable, objectively viewing the facts, a reasonable officer could conclude that Plaintiff's actions were very suspicious and perhaps even that Plaintiff was ultimately surrendering. In sum, although the events underlying this lawsuit were understandably disturbing to Plaintiff, qualified immunity is available to Defendant on this claim as well.

**<u>Approaching Plaintiff with a Gun Pointed at Him</u>**

As to whether Defendant is entitled to qualified immunity on Plaintiff's excessive force claim, "the Fourth Amendment requires [a court] to ask, from the perspective of a reasonable officer on the scene, whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Franklin for Estate of Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (citation omitted). The Court and the parties were unable to identify Eighth Circuit precedent addressing the issue directly of whether pointing a gun at an individual—in and of itself—can violate the Fourth Amendment under some circumstances, case law from other circuits suggests that it can. *See, e.g., Mlodzinski v. Lewis*, 648 F.3d 24, 38 (1st Cir. 2011); *Robinson v. Solano Cty.*, 278 F.3d 1007, 1013-15 (9th Cir. 2002) (en banc).

However, even if this was "clearly established" as a general rule, the rule's contours were not so well defined such that it would be clear to a reasonable officer that Defendant's conduct was unlawful in the situation he confronted. Defendant knew Plaintiff had a weapon on him, and even if Defendant did not see Plaintiff's movements in the front seat as Plaintiff was driving, it would not have clear to a reasonable officer that approaching Plaintiff with a gun pointed at him was a violation of Plaintiff's rights. *See, e.g., Navarrete-Barron*, 192 F.3d at 790. Thus, the Court concludes, that viewing the evidence in the light most favorable to Plaintiff, Defendant is entitled to qualified immunity on Plaintiff's excessive force claim.

**<u>Remaining Claims</u>**

The Court will grant Defendant summary judgment on Plaintiff's remaining claims. As noted above, the Court concludes that Defendant's bodcam recording establishes that Defendant did not search the cargo area of Plaintiff's truck at the exit ramp when or as Plaintiff alleges. Plaintiff does not challenge the accuracy of the recording, and, indeed, it is the same recording on which Plaintiff relies for establishing that Defendant's approached Plaintiff with a gun pointed at him.

The Court agrees with Defendant that even if he took two bullets from Plaintiff's gun, this would not constitute a violation of Plaintiff's substantive due process rights.[3] While Plaintiff claims that the theft shocks the conscience because Defendant took the bullets to frame Plaintiff with them, there is no evidence of this being Defendant's motive, and no evidence to support the claim in general, especially in light of Plaintiff's statements at the exit ramp that he did not know how many bullets were in his gun at the time.

Lastly, as Defendant argues, Plaintiff has presented insufficient evidence to support his Equal Protection or First Amendment claims. Defendant's statement at the rest area, "don't play the race card with me," even if said in an angry tone, does not provide sufficient evidentiary support to proceed with this claim. *See Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003) (holding that a police officer was entitled to summary judgment on a claim that a *Terry* stop was racially motivated, where the

---

[3] Although it remains unclear whether Plaintiff is asserting a property or liberty substantive due process claim, his opposition brief appears to discuss a liberty interest. ECF No. 52 at 26.

plaintiff offered no evidence, other than her own personal opinion, that the stop was racially motivated; such a claim normally requires proof that similarly situated individuals were not stopped); *Ratliff v. City of Shannon Hills*, 52 F. Supp. 3d 904, 913 (E.D. Ark. 2014) (granting qualified immunity to officers on the plaintiff's Equal Protection claim that she was arrested because of her race, due to lack of evidence that similarly-situated people were not stopped or arrested). The First Amendment claim is even more deficient in evidence. Thus, Defendant is entitled to summary judgment on these three remaining claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that motion of Defendant Austin Clark for summary judgment is **GRANTED**. (ECF No. 41).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January 2018.